**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| PARITY NETWORKS LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Case No. 6:19-CV-00152-JDK** |
| vs. ) | |
| ) | |
| PALO ALTO NETWORKS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT PALO ALTO NETWORKS, INC.'S MOTION AND
SUPPORTING MEMORANDUM TO TRANSFER VENUE TO
<u>THE NORTHERN DISTRICT OF CALIFORNIA</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1
II. ARGUMENT .................................................................................................................. 2
   A. LEGAL STANDARD ................................................................................................... 2
   B. THIS ACTION COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA 4
   C. THE PRIVATE INTEREST FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER ...................... 4
      1. *THE RELATIVE EASE OF ACCESS TO SOURCES OF PROOF FAVORS TRANSFER.* ................. 4
      2. *THE AVAILABILITY OF COMPULSORY PROCESS TO SECURE THE ATTENDANCE OF WITNESSES FAVORS TRANSFER.* ........................................................................ 8
      3. *THE COST OF ATTENDANCE FOR WILLING WITNESSES FAVORS TRANSFER.* ..................... 9
      4. *ALL OTHER PRACTICAL PROBLEMS THAT MAKE TRIAL OF A CASE EASY, EXPEDITIOUS, AND INEXPENSIVE FAVOR TRANSFER.* ............................................................. 11
   D. THE PUBLIC INTEREST FACTORS FAVOR TRANSFER ............................................................. 12
      1. *THE ADMINISTRATIVE DIFFICULTIES FLOWING FROM COURT CONGESTION IS NEUTRAL.* ................................................................................................. 12
      2. *INTEREST IN HAVING LOCALIZED INTERESTS DECIDED AT HOME FAVORS TRANSFER.* ... 12
      3. *THE FAMILIARITY OF THE FORUM WITH THE GOVERNING LAW PUBLIC INTEREST FACTOR IS NEUTRAL.* ................................................................................ 13
      4. *THE AVOIDANCE OF UNNECESSARY PROBLEMS OF CONFLICT OF LAWS PUBLIC INTEREST FACTOR IS NEUTRAL.* ................................................................. 14
III. CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*AGIS Software Development LLC v. HTC Corp.*, No. 2:17-CV-00514-JRG, 2018 WL 4680557 at *8 (E.D. Tex. Sep. 28, 2018) ................................................................................................ 3

*Astute Tech., LLC v. Learners Digest Int'l. LLC*, Case No. 2:12-cv-689-WCB, 2014 WL 12596468, at *10 (E.D. Tex. April 28, 2014) ................................................................... 13

*Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-cv-548-ALM, 2016 WL 4095547, at *6 (E.D. Tex. Aug. 2, 2016) ............................................................................................ 12

*DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13-CV-919-JDL, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 7, 2014) ........................................................................................................... 11

*Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761 (E.D. Tex. 2009) .......................................... 4, 13

*In re Genentech, Inc.*, 566 F.3d 1338 (5th Cir. 2009) ........................................................... 3, 4, 10

*In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011) .................................................................. 8

*In re Volkswagen AG,* 371 F.3d 201 (5th Cir. 2004) *("Volkswagen I")* ................................. 3, 10

*In re Volkswagen of Am., Inc.,* 545 F.3d 304 (5th Cir. 2008) *("Volkswagen II")* .............. 2, 3, 5, 9

*In re Volkswagen of Am., Inc.*, 566 F.3d 1349 (Fed. Cir. 2009) ("*Volkswagen III")* ..................... 2

*In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) ....................................................... 8

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382, at *4 (E.D. Tex. Jan. 23, 2012) .................................................................................. 8

*QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650 (E.D. Tex. 2007) ........................................ 14

*Software Rights Archive, LLC, v. Google, Inc.*, No. 2:07-cv-511-CE, 2010 WL 2950351, at *2 (E.D. Tex. Jul. 22, 2010) ............................................................................................................ 5

*SSL Services, LLC v. Cisco Sys., Inc.*, No. 2:15-cv-00433-JRG-RSP, 2016 WL 727673, at *3 (E.D. Tex. Feb. 24, 2016) ........................................................................................................... 5

*TC Heartland LLC v. Kraft Food Group Brands LLC,* 137 S.Ct. 1514 (2017) .............................. 4

*TS Tech USA Corp.*, 551 F.3d 1315, 1320 (5th Cir. 2008) ............................................................ 3

*Voxpath RS, LLC v. LG Electronics U.S.A., Inc.*, No. 2:10-CV-160-JRG, 2012 WL 194370 at *3 (E.D. Tex. Jan. 23, 2012) ........................................................................................................... 9

*Zoltar Satellite Sys. v. LG Electronics Mobile Communications, Co.,* 402 F.Supp.2d 731 (E.D. Tex. 2005) ................................................................................................................................ 11

**Other Authorities**

28 U.S.C. § 1404(a) ............................................................................................................. 1, 2, 16

Pursuant to 28 U.S.C. § 1404(a), Defendant Palo Alto Networks, Inc. ("Palo Alto Networks") respectfully requests an order transferring this action to the United States District Court for the Northern District of California, where the plaintiff is currently litigating a related patent dispute involving six of the seven asserted patents in this case,[1] and where an overwhelming majority of relevant witnesses, documents, and evidence is located.

## I.   INTRODUCTION

This is another patent infringement lawsuit brought by Plaintiff Parity Networks LLC ("Parity") against a company headquartered in Northern California with no relevant ties to this District. This Court already transferred Parity's lawsuit against California-based Juniper Networks, Inc. ("Juniper Networks") to the Northern District of California. *Parity Networks, LLC v. Juniper Networks, Inc.*, 6:17-cv-00495-RWS-KNM, Dkt. 50 (granting transfer); Dkt. 54 (denying Parity's motion for reconsideration). The result should be the same here.

The Northern District of California is a clearly more convenient forum. Palo Alto Networks' headquarters in Santa Clara, California, houses its engineering research, design, and development departments for its firewall products including PA-200, PA-5000, and PA-7000 series running PAN-OS (the "Accused Products"), and also the marketing, sales, operations, product management, and finance departments as to the Accused Products. All identified material and relevant witnesses and documentary or physical evidence in connection with these departments are located within the Santa Clara, California, headquarters. The source code for Palo

---

[1] *Parity Networks LLC, v. Juniper Networks, Inc.*, No. 4:18-cv-06452 (N.D. Cal.), Eastern District of Texas Transfer Order attached as Exhibit A. The overlapping asserted patents in that case and in the instant action are U.S. Patent Nos. 6,252,848; 6,553,005; 6,763,394; 7,103,046; 7,107,352; and 7,719,963. Parity Networks LLC has not asserted the single non-overlapping patent, specifically U.S. Patent No. 6,870,844, in any action currently pending in the Eastern District of Texas. All seven patents listed here will be referred to as the "Asserted Patents."

Alto Networks' firewall products is developed, stored, and archived in Santa Clara, California. The PA-200, PA-5000, and PA-7000 hardware appliances also are designed and developed in Palo Alto Networks' California headquarters.

In addition, the Northern District of California is a clearly more convenient forum for relevant third-party witnesses – including all five of the named inventors of the Asserted Patents and the prosecuting attorney of the Asserted Patents, each of whom are located within the Northern District of California. By contrast, Parity has no genuine ties to the Eastern District of Texas. Moreover, the Northern District of California is already well-acquainted with the subject matter of this litigation, as it is presiding over the Juniper Networks case that involves six of the seven patents asserted here. Palo Alto Networks therefore respectfully asks the Court to grant this motion and transfer this case to the Northern District of California.

## II.   ARGUMENT

### A.   Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Fifth and Federal Circuits have set forth the standard to be used in deciding motions to transfer venue. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*"), (applying the Fifth Circuit's en banc *Volkswagen II* decision to rulings on transfer motions out of this Circuit); *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) *("Volkswagen II*") (*en banc*). In *Volkswagen II*, the Fifth Circuit made clear that transfer is appropriate when the transferee forum is "clearly more convenient" than the plaintiff's chosen venue. *Id*.

Importantly, "Fifth Circuit precedent clearly forbids treating plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (5th Cir. 2008) (citing *Volkswagen II*, at 314 n. 10). Rather, the most important inquiry is the location of the evidence in the case including witnesses and documents. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (5th Cir. 2009); *AGIS Software Development LLC v. HTC Corp.*, No. 2:17-CV-00514-JRG, 2018 WL 4680557 at *8 (E.D. Tex. Sep. 28, 2018) (stating that the "convenience of the witnesses is probably the single most important factor in a transfer analysis").

Under the Fifth Circuit's framework, the threshold question is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) *("Volkswagen I")*. If the transferee district is a proper venue, then the court must weigh the relative conveniences of parties and witnesses as well as the interests of the particular venues in hearing the case. *Id*. In making the convenience determination, the Fifth Circuit considers several private and public interest factors, with no single factor being dispositive. *Id.*

"The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen II,* at 315 (quoting *Volkswagen I,* at 203). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.* (quoting *Volkswagen I,* at 203). When balancing these factors, the Federal Circuit has instructed "that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff,

3

the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

### B.     This Action Could Have Been Brought in the Northern District of California

As a threshold issue, this case could have been brought in the Northern District of California as venue is proper in that district. Venue in a patent infringement case is proper in the district where the defendant corporation resides or where the defendant has committed the alleged acts of infringement and maintains a regular and established place of business. 28 USC. §1400(b). Palo Alto Networks is headquartered in Santa Clara, California, within the Northern District of California. Declaration of Maya Marcus ("Marcus Dec.") at ¶ 2. Parity's complaint alleges that Palo Alto Networks infringes the Asserted Patents by "making, using (including for testing purposes), selling and offering for sale" the Accused Products. *See, e.g.,* Dkt. 1 ¶ 32. The Accused Products were designed, developed, and tested at Palo Alto Networks' headquarters in Santa Clara, California. Marcus Dec. at ¶ 4; Ex. B. Thus, venue is proper in the Northern District of California. *See TC Heartland LLC v. Kraft Food Group Brands LLC,* 137 S.Ct. 1514, 1521 (2017) (venue is proper where the defendant is incorporated, or where it has committed an act of infringement and maintains a regular and established place of business).

### C.     The Private Interest Factors Weigh Heavily in Favor of Transfer

####    1.     *The relative ease of access to sources of proof favors transfer.*

"[A]lmost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761, 767 (E.D. Tex. 2009). This is particularly true in patent infringement cases, where the bulk of the relevant evidence usually comes from the accused infringer. *Genentech*, 566 F.3d at 1345 (finding

that "the place where the defendant's documents are kept weighs in favor of transfer to that location"); *see also*, *Software Rights Archive, LLC, v. Google, Inc.*, No. 2:07-cv-511-CE, 2010 WL 2950351, at *2 (E.D. Tex. Jul. 22, 2010) (stating that "the ease of accessing the defendants' sources of proof weighs more heavily than the ease of plaintiff's proof, because the majority of relevant evidence in patent infringement suits usually comes from the accused infringers"). Although there have been technological advances in the transportation of electronic documents, "the Court must consider the actual location of documents and physical evidence." *Volkswagen II*, at 315; *see also SSL Services, LLC v. Cisco Sys., Inc.*, No. 2:15-cv-00433-JRG-RSP, 2016 WL 727673, at *3 (E.D. Tex. Feb. 24, 2016) (noting that the focus of this factor is on the "physical location" of evidence, rather than its remote accessibility).

Palo Alto Networks is headquartered in Santa Clara, California—located a mere 7.9 miles from the Northern District of California's San Jose courthouse. Marcus Dec. at ¶ 2; Ex. C. Accordingly, the vast majority of its physical and documentary evidence is located in that District. All of Palo Alto Networks' documents relating to the development, manufacturing, sales, and marketing of the Accused Products are kept at Palo Alto Networks' Santa Clara, California, headquarters. Marcus Dec. at ¶ 5. The Accused Products are designed, developed, and tested at Palo Alto Networks' headquarters; the source code for the Accused Products is developed, maintained, and archived there; and samples of the Accused Products are located there. *Id*. at ¶ 4. Documentation (electronic or hard copy) concerning the Accused Products is located at Palo Alto Networks' Santa Clara, California, headquarters, including any technical, packaging, financial, or marketing documents. *Id*. at ¶ 5. Moreover, to the extent any electronic data on the servers in Santa Clara, California, are identified as relevant, this electronic data will need to be accessed and retrieved by Palo Alto Networks' IT employees in Santa Clara, California. *Id*. Each of these

5

sources of information will be highly relevant to any non-infringement position Palo Alto Networks may develop during the course of this litigation and any infringement theory Parity Networks may allege.

Further, all material and relevant employee witnesses with knowledge regarding the Accused Products are located in California, not in Texas. Marcus Dec. at ¶¶ 6-9. Palo Alto Networks' Santa Clara, California, headquarters houses its technical, marketing, sales, operations, product management, and finance departments relating to the Accused Products, and more than half of its U.S. employees. *Id*. at ¶¶ 3, 5. All of Palo Alto Networks' identified material and relevant witnesses in this case are located in Santa Clara, California, including the following:

- Jesse Ralston, Senior Vice President of Products Network Security: knowledge regarding the design, development, and testing of the Accused Products;

- Pulikeshi Ramanath, Director of Network Security: knowledge regarding the design, development, and testing of the Accused Products;

- Patrick Xu, Vice President of Engineering: knowledge regarding the design, development, and testing of the Accused Products;

- Glen Gibson, Director, Product Management: knowledge regarding the design, development, and testing of the hardware appliances of the Accused Products;

- Greg Mayer, Vice President of Revenue, Finance, and Accounting: knowledge regarding U.S. revenue for the Accused Products;

- Vonnie French, Senior Vice President, Worldwide Operations: knowledge regarding supply chain and manufacturing operational support of the Accused Products;

- Michael Ogden, Vice President, Worldwide Sales Operations: knowledge regarding world-wide sales operations regarding the Accused Products; and

- Navneet Singh, Product Marketing Director: knowledge regarding marketing of the Accused Products.

*Id.* at ¶ 8. In other words, all of Palo Alto Networks' identified material and relevant witnesses are housed in the company's Santa Clara, California, headquarters, and no material and relevant witnesses are located in Texas. *Id.* at ¶ 9.

Based on the location of Palo Alto Networks' documents and witnesses, the inquiry under this factor need not go any further. A transfer is warranted under this factor. Nevertheless, continuing the inquiry to consider the location of Parity's witnesses and third-party witnesses also supports transfer.

Palo Alto Networks is not aware of any Parity witnesses located in Texas. Parity's complaint alleges only that Parity is "a limited liability company organized and existing under the laws of the State of Texas," and that its "registered agent for service of process in Texas is InCorp Services, Inc." in Austin, Texas. Dkt. 1 ¶ 4. Parity does not identify any business office at all, let alone in Texas. To be sure, Parity was formed in September 2016, contemporaneous with its acquisition of the Asserted Patents, and lists a mailing address belonging to "WorkSuites" located at 1400 Preston Rd., Ste. 400, in Plano, Texas, where customers can rent an office, a desk, a "part-time office," or just a "virtual office" mailbox to obtain a "business address and all the benefits of a physical office without the physical office." Ex. D, Ex. M; *see also* Ex. A, *Parity Networks v. Juniper Networks,* 6:17-cv-00495-RWS-KNM, Dkt. 50, Order Granting Transfer, at 6-7 (noting "Plaintiff cites no non-party witnesses located in the Eastern District of Texas" who would willingly attend trial). Parity's "address" at WorkSuites thus appears to be an artifact of litigation.

7

The Federal Circuit cautions that where a plaintiff's "presence in Texas appears to be recent, ephemeral, and an artifact of litigation," courts should not be misled. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) ("We further explained that…the offices in *Zimmer* staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue."). This Court has declined to consider such sham locations in deciding whether to transfer, and the same result should apply here. *See Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382, at *4 (E.D. Tex. Jan. 23, 2012) ("The Federal Circuit has made clear that recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis.").

Further, all of the named inventors of the seven Asserted Patents reside in the Northern District of California, (Ex.'s E-I), as does the prosecuting attorney for each application resulting in those issued patents. (Ex. J).

Accordingly, because specific sources of proof as well as the vast majority of witnesses and evidence are located within the Northern District of California, this factor weighs heavily in favor of transfer.

> 2. *The availability of compulsory process to secure the attendance of witnesses favors transfer.*

For this factor, the Court evaluates whether this District or the Northern District of California has subpoena power over non-party witnesses. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (district court should have weighed another venue's absolute subpoena power over non-party witness to favor transfer); *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (compulsory-process factor "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue"). A venue that enjoys the absolute subpoena power

8

for trial is more convenient than a venue where subpoenas will be subject to motions to quash. *Volkswagen*, 545 F.3d at 316.

Here, the Northern District of California enjoys absolute subpoena power. ***All*** identified material and relevant non-party witnesses are subject to compulsory process in the Northern District of California. Each named inventor of the Asserted Patents resides in the Northern District of California:

- David A. Skirmont in Redwood City, California;
- Puneet Agarwal in San Francisco, California;
- Russ Tuck in San Jose, California;
- Deepak Mansharamani in Saratoga, California; and
- Erol Basturk in Cupertino, California.

Exs E-I. Similarly, the prosecuting attorney for nearly all of the Asserted Patents, Donald R. Boys of Central Coast Patent Agency, is located in Watsonville, California, within the Northern District of California. Ex. J.

Palo Alto Networks is not aware of a single material and relevant non-party witness located in the Eastern District of Texas or within 100-miles of Tyler, Texas. Accordingly, the Northern District of California has absolute subpoena power. This factor heavily favors transfer.

   3. *The cost of attendance for willing witnesses favors transfer.*

For this factor, the Court "must weigh the cost for witnesses to travel and attend trial" in the Eastern District of Texas versus the Northern District of California. *Voxpath RS, LLC v. LG Electronics U.S.A., Inc.*, No. 2:10-CV-160-JRG, 2012 WL 194370 at *3 (E.D. Tex. Jan. 23, 2012) (noting that the court must consider "the convenience of both the party and non-party witness[,]" while according more weight to non-party witnesses). This factor is generally the most important

factor in a transfer analysis. *See In re Genentech*, 566 F.3d at 1343. This factor is to be analyzed in view of the Fifth Circuit's "100–mile" rule, which provides that, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, at 204-205.

       a. *Non-party Witnesses*

As identified above, all material and relevant non-party witnesses are located within the Northern District of California. Specifically, all five of the named inventors of the Asserted Patents and the prosecuting attorney are located in the Northern District of California. *See* Section II.C.2. *infra*. Palo Alto Networks is not aware of any material and relevant non-party witness located within the Eastern District of Texas.

       b. *Party Witnesses*

Here, all of Palo Alto Networks' identified material and relevant witnesses are located in the Northern District California. None live in or near this District. Palo Alto Networks has specifically identified several employees, all located in Santa Clara, California, that led the design, development, marketing, sales, finances, and product management of the Accused Products. Marcus Dec. at ¶ 8. These witnesses and their Santa Clara, California, based teams collectively have knowledge regarding the entire life cycle of the Accused Products, from design and development to the end of sale, and are likely to serve as Rule 30(b)(6) corporate representatives and/or trial witnesses for Palo Alto Networks, depending on the issues that arise in this case. These witnesses will have to travel over 1,700 miles (at much greater expense and inconvenience) if the case remains in this District. Ex. K.

Thus, this factor weighs heavily in favor of transfer. *See Nintendo*, 589 F.3d at 1198 ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no

convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

        4.    *All other practical problems that make trial of a case easy, expeditious, and inexpensive favor transfer.*

The fourth private interest factor encompasses "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen I*, at 203. This includes problems "that are rationally based on judicial economy." *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13-CV-919-JDL, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 7, 2014). "In cases that involve a highly technical subject matter, such as patent litigation, judicial economy may favor transfer to a court that is already familiar with the issues involved in the case." *Zoltar Satellite Sys. v. LG Electronics Mobile Communications, Co.,* 402 F.Supp.2d 731, 735 (E.D. Tex. 2005).

As identified above, six of the seven Asserted Patents in this case are already before the Northern District of California in connection with the *Parity Networks v. Juniper Networks* case. *Supra*, at n. 1. The single non-overlapping patent, U.S. Patent No. 6,870,844, is not currently being asserted against any other defendant in any other court.[2] Thus, as to six of the seven Asserted Patents here, the judges in the Northern District of California presiding over the *Juniper Networks* case have already had the opportunity to familiarize themselves with Parity's claims, the Asserted Patents, and the surrounding facts in relation to both. The Northern District of California is accordingly well-positioned to receive this matter. Additionally, this case is in its early stages and

---

[2] Parity previously asserted U.S. Patent No. 6,870,844 against Hewlett Packard Enterprise Company in this Court, but that case was dismissed in March 2019 pursuant to a Joint Motion to Dismiss. *See* Case No. 6:17-cv-683-JDK-KNM, Dkt. 1 (Complaint), Dkt. 39 (Final Judgment). Even so, "[i]t is improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits." *In re Google*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (granting mandamus).

therefore there are no practical problems that would deter this Court from transferring this litigation. *Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-cv-548-ALM, 2016 WL 4095547, at *6 (E.D. Tex. Aug. 2, 2016) (finding no practical problems for transfer when the Court had not previously considered any substantive issues nor entered a claim construction order). This factor weighs in favor of transfer.

### D.     The Public Interest Factors Favor Transfer

#### 1.     *The administrative difficulties flowing from court congestion is neutral.*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech,* 566 F.3d at 1347. The most recent Federal Judicial Caseload Statistics show that the median time to disposition for civil cases in Northern District of California is 7.9 months, whereas, the median time to disposition in the Eastern District of Texas is 8.7 months. Ex. L. While this tends to favor transfer, the Federal Circuit has noted that this factor the "most speculative" and that "case-disposition statistics may not always tell the whole story." *In re Genentech,* 566 F.3d at 1347. Accordingly, this factor is neutral.

#### 2.     *Interest in having localized interests decided at home favors transfer.*

This second public interest factor heavily favors transfer. It is widely understood that when there are significant connections between a venue and the events that gave rise to the suit, this factor should be weighed in favor of transfer to that venue. *Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). As such, there may be a strong local interest where "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *Id*. at 1336.

Here, the Northern District of California has a larger interest than this District in resolving this dispute. Palo Alto Networks is headquartered in the Northern District of California, the

12

research and development of the Accused Products took place in the Northern District of California, and documents and source code regarding the Accused Products are located in the Northern District of California. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761, 769 (E.D. Tex. 2009) (finding this factor favored transfer where the accused products were designed and developed at the defendant's principal place of business in the transferee forum). All of Palo Alto Networks' expected material and relevant witnesses – the individuals who worked on and continue to work on the Accused Products, and whose work is at issue by Parity's allegations of infringement – are located in the Northern District of California. *In re Hoffmann-LaRoche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (transferee forum's local interest in the case "remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"). All known third-party witnesses are also located in the Northern District of California, including all five inventors and the prosecuting attorney of the Asserted Patents. By contrast, this District does not appear to have any interest in this dispute. Where, as here, the Accused Products are available equally throughout the country, which supports transfer to the venue with a more genuine stake in the controversy. *Volkswagen I*, 545 F.3d at 317-18 (finding that the general availability of a product to consumers in the district did not create a localized interest sufficient to weigh against transfer).

      3.    *The familiarity of the forum with the governing law public interest factor is neutral.*

Here, the third public interest factor of "the familiarity of the forum with the law that will govern the case," *Volkswagen II*, 545 F.3d at 315, is neutral. Both the Eastern District of Texas and the Northern District of California would be equally capable of applying the patent laws of the United States and each court has an active patent docket and judges who are very experienced with

13

patent lawsuits. *See Astute Tech., LLC v. Learners Digest Int'l. LLC*, Case No. 2:12-cv-689-WCB, 2014 WL 12596468, at *10 (E.D. Tex. April 28, 2014).

> 4. *The avoidance of unnecessary problems of conflict of laws public interest factor is neutral.*

The fourth public interest factor, "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law," is also neutral. *Volkswagen II*, 545 F.3d at 315. As addressed by this Court when granting transfer to the Northern District of California in the *Juniper Networks* case: "It is unlikely that any issues regarding conflict of law will arise, and it is a certainty that application of foreign law will not be required, due to the federal question involved. Further, any substantive issues in the case would be reviewed by the Court of Appeals for the Federal Circuit irrespective of whether the case is heard in this Court or the Northern District of California. Accordingly, th[is] factor[ is] neutral because both courts are fully capable of applying federal patent laws to Plaintiff's infringement claims." *Juniper*, 6:17-cv-00495-RWS-KNM, Dkt. 25 at 12-13 (citing *QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 667 (E.D. Tex. 2007)).

### III. CONCLUSION

Based on the foregoing, Palo Alto Networks respectfully requests that the Court grant its motion to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated: July 2, 2019

Respectfully submitted,

*/s/ Michelle L. Marriott*
Michelle L. Marriott
Eric A. Buresh
**ERISE IP, P.A.**
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Phone: (913) 777-5600
Facsimile: (913) 777-5601
michelle.marriott@eriseip.com
eric.buresh@eriseip.com

Attorneys for Defendant Palo Alto Networks, Inc.

## **CERTIFICATE OF CONFERENCE**

On June 7, 2019, I conferred by telephone with Andrew DiNovo, counsel for Parity Networks, regarding the substance of this motion, in compliance with Local Rule CV-7(h). Parity Networks did not agree that this case should be transferred to the Northern District of California, and the parties discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve. Plaintiff Parity Networks, LLC opposes this motion.

*/s/ Michelle L. Marriott*
Michelle L. Marriott

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 2, 2019 a copy of the foregoing document was served upon all counsel of record who are deemed to have consented to electronic service.

*/s/ Michelle L. Marriott*
Michelle L. Marriott